UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA　　　　　　:

　　　　　- v. -　　　　　　　　　　　:

IAT HONG,　　　　　　　　　　　　　　:
BO ZHENG, and
CHIN HUNG,　　　　　　　　　　　　　:

　　　　　　　　Defendants.　　　　　:

- - - - - - - - - - - - - - - - - - x

**SEALED**
**INDICTMENT**

S1 16 Cr. 360

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: **OCT 1 3 2016**

## COUNT ONE
## (Conspiracy to Commit Insider Trading)

The Grand Jury charges:

### Background

#### The Defendants and Relevant Brokerage Accounts

1.　At all times relevant to this Indictment, IAT

HONG, BO ZHENG, and CHIN HUNG, the defendants, were citizens of

mainland China and residents of China or Hong Kong.

2.　Between in or about April 2014 and in or about late

2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, purchased

and sold equities of publicly-traded companies on U.S.-based stock

exchanges through at least three online broker-dealers (the "U.S.

Brokers"), which traded on behalf of at least six accounts

maintained by the defendants: (a) at least three accounts

controlled by HONG (the "HONG Accounts"); (b) at least two accounts

controlled by ZHENG (the "ZHENG Accounts"); and (c) at least one

account controlled by HUNG (the "Hung Account," collectively with the Hong Accounts and the Zheng Accounts, the "Trading Accounts"). HONG, ZHENG, and HUNG opened the Trading Accounts between in or about April 2014 and October 2014.

3.     At certain times relevant to this Indictment, the Robotics Company was a start-up robotics design company based in China, started by BO ZHENG, the defendant, which was engaged in the business of developing robot controller chips and providing control system solutions.    IAT HONG and CHIN HUNG, the defendants, were both involved in running the Robotics Company.

### The Victim Law Firms and Certain Relevant M&A Clients

4.     At all times relevant to this Indictment, Law Firm-1 was a U.S.-based international law firm with offices in New York, New York, which, among other services, provided advisory services to companies engaged in corporate mergers and acquisitions ("M&A transactions"), including:

a.     In or about June 2014, Law Firm-1 was retained by a company not named herein (the "Company") in connection with a contemplated acquisition of Intermune, a U.S.-based drug maker publicly traded at that time on the NASDAQ exchange under the ticker symbol "ITMN" (the "Contemplated Intermune Transaction"). A partner in the M&A group at Law Firm-1 ("Partner-1") was an attorney with responsibility in connection with the Contemplated

2

Intermune Transaction. The Contemplated Intermune Transaction was ultimately not consummated.

       b.   In or about January 2015, Law Firm-1 was retained by Intel Corporation ("Intel"), a multinational technology company publicly traded on the NASDAQ exchange under the ticker symbol "INTC," in connection with a contemplated acquisition of Altera Corporation ("Altera"), an integrated circuit manufacturer publicly traded on the NASDAQ exchange under the ticker symbol "ALTR" (the "Intel-Altera Transaction"). Partner-1 was an attorney with responsibility in connection with the Intel-Altera Transaction.

       5.   At all times relevant to this Indictment, Law Firm-2 (collectively with Law Firm-1, the "Infiltrated Law Firms") was a U.S.-based international law firm with offices in New York, New York, which, among other services, provided advisory services to companies engaged in M&A transactions, including:

       a.   In or about December 2014, Law Firm-2 was retained by Pitney Bowes Inc. ("Pitney Bowes"), an international business services company publicly traded on the New York Stock Exchange under the ticker symbol "PBI," in connection with a contemplated acquisition of Borderfree, Inc. ("Borderfree"), an e-commerce company headquartered in New York, New York and

3

publicly traded on the NASDAQ exchange under the ticker symbol
"BRDR" (the "Pitney Bowes-Borderfree Transaction"). A partner
in the M&A group at Law Firm-2 ("Partner-2") was an attorney
with responsibility in connection with the Pitney Bowes-
Borderfree Transaction.

6. At all times relevant to this Indictment, certain
other U.S.-based international law firms with offices in New
York, New York, provided advisory services to companies engaged
in M&A transactions, including Law Firm-3, Law Firm-4, Law Firm-
5, Law Firm-6, and Law Firm-7 (the "Targeted Law Firms,"
collectively with the Infiltrated Law Firms, the "Victim Law
Firms").

### Robotics Company Victims

7. At all times relevant to this Indictment,
Robotics Company Victim-1 was a U.S.-based company engaged in
the business of designing and building robots, including through
the development of consumer robotics.

8. At all times relevant to this Indictment, Robotics
Company Victim-2 (together with Robotics Company Victim-1, the
"Robotics Company Victims") was a Taiwan-based company engaged in
the design, testing, manufacture and distribution of analog
integrated circuits for use in consumer electronics, computers,
and communications equipment.

4

## Overview of the Hacking and Insider Trading Schemes

9. As set forth more fully below, from at least in or about April 2014 through at least in or about late 2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, devised and carried out a scheme to enrich themselves by obtaining and trading on material, nonpublic information ("Inside Information"), exfiltrated from the networks and servers of the Victim Law Firms, concerning M&A transactions. In particular, the defendants caused unauthorized access to the networks and servers of the Infiltrated Law Firms and obtained Inside Information regarding planned yet unannounced M&A transactions. HONG, ZHENG, and HUNG then purchased the stock of the targets of those transactions, which was expected to, and typically did, increase in value after the transactions were ultimately announced.

10. For example, between in or about August 2014 and in or about late 2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, through the Trading Accounts, purchased shares of at least five publicly-traded companies prior to public announcements that those companies would be acquired. After the corporate acquisitions were announced, HONG, ZHENG, and HUNG sold their recently-acquired shares of the target companies, resulting in profits to HONG, ZHENG, and HUNG in excess of $4 million. In each

5

case, one of the Infiltrated Law Firms represented either the target or a contemplated or actual acquirer in the transaction.

11.   In addition to obtaining and trading on Inside Information concerning M&A transactions exfiltrated from the networks and servers of the Infiltrated Law Firms, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, repeatedly attempted to cause unauthorized access to the networks and servers of the Targeted Law Firms using means and methods similar to those used to successfully access the Infiltrated Law Firms.   For example, between March and September 2015, HONG, ZHENG, and HUNG attempted to cause unauthorized access to the networks and servers of the Targeted Law Firms on more than 100,000 occasions.

### The Law Firm-1 Hack and Insider Trading

12.   Beginning at least in or about July 2014, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, obtained Inside Information from Law Firm-1 in furtherance of their scheme to enrich themselves by obtaining and trading on the basis of Inside Information exfiltrated from the networks and servers of the Victim Law Firms.

13.   On or about July 21, 2014, BO ZHENG, the defendant, emailed IAT HONG, the defendant, a Chinese-language email titled, "[Law Firm-1] analysis template," with an attached spreadsheet. The spreadsheet contained historical data regarding two public M&A

6

transactions for which Partner-1 provided advisory services in approximately 2012. Specifically, the spreadsheet contained financial information concerning the details and success of the deals, including the buyers and sellers, the change in stock price after the deal, the name of Partner-1 as the "Person in Charge," and information pertaining to "[Law Firm-1]'s Involvement" in each transaction.

14. On or about July 29, 2014, IAT HONG, the defendant, emailed CHIN HUNG, the defendant, a document titled "New York.docx." The document listed the names of eleven partners at Law Firm-1, including Partner-1. Ten of the eleven partners provided M&A advisory services.

15. Also beginning at least in or about July 2014, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, without authorization, caused one of Law Firm-1's web servers (the "Law Firm-1 Web Server") to be accessed by using the unlawfully obtained credentials of a Law Firm-1 employee. HONG, ZHENG, and HUNG then caused malware to be installed on the Law Firm-1 Web Server. The access to the Law Firm-1 Web Server allowed unauthorized access to at least one of Law Firm-1's email servers (the "Law Firm-1 Email Server"), which contained the emails of Law Firm-1 employees, including Partner-1.

*The Contemplated Intermune Transaction*

16. In or about June 2014, Law Firm-1 was retained by the Company in connection with the Contemplated Intermune Transaction.

17. Between on or about August 1, 2014 and on or about August 15, 2014, Partner-1 was privy to Inside Information about the Contemplated Intermune Transaction. For example, on more than one occasion between August 7, 2014 and August 15, 2014, Partner-1 obtained information, including via email, about details of the proposed transaction, such as the price per share the Company was considering offering to acquire Intermune.

18. Between at least as early as August 1, 2014 and on or about August 9, 2014, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, caused more than 40 gigabytes of confidential data to be exfiltrated from the Law Firm-1 Email Server over the course of at least eight days.

19. On or about August 13, 2014, beginning at approximately 10:46 a.m. EST, and continuing through approximately 1:06 p.m. EST, during the time Law Firm-1 was advising the Company on the Contemplated Intermune Transaction and after IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, had obtained access to confidential email data maintained at Law Firm-1, HONG used the Inside Information to purchase 7,500

8

shares of Intermune stock for the Trading Accounts. These
trades were executed on exchange platforms in the United States,
including through exchanges based in the Southern District of
New York. Prior to that date, none of the Trading Accounts had
purchased any shares of Intermune.

20. At approximately 1:13 p.m. EST on August 13, 2014,
a financial newspaper published an article reporting that
Intermune was working with financial advisors to evaluate
strategic options (the "August 13 Newspaper Article"). As a
result of the August 13 Newspaper Article, Intermune's share price
increased by approximately $5 per share, or approximately nine
percent, from Intermune's share price on August 13, 2014 just prior
to the publication of the August 13 Newspaper Article. As a result
of the defendants' purchases of Intermune, which were based on
Inside Information stolen from Law Firm-1, the value of the
defendants' shares of Intermune significantly increased. Later
that day, IAT HONG, the defendant, purchased an additional 1,000
shares of Intermune stock in the Trading Accounts.

21. Following the publication of the August 13
Newspaper Article, IAT HONG, BO ZHENG, and CHIN HUNG, the
defendants, exploited their continued unauthorized access to email
data belonging to Law Firm-1 by exfiltrating approximately 10
gigabytes of confidential data from the Law Firm-1 Email Server on

or about August 16 and 17, 2014.

22.  To further effectuate the insider trading scheme, between on or about August 18, 2014 and on or about August 21, 2014, IAT HONG and BO ZHENG, the defendants, used the Inside Information to purchase additional Intermune shares in the Trading Accounts on at least five occasions, totaling an additional 9,500 shares of Intermune stock.

23.  The Contemplated Intermune Transaction was never consummated or announced. Instead, before the market opened on Monday, August 25, 2014, Intermune announced that it had reached an agreement to be acquired by Roche AG, a German company. On that day, Intermune's share price increased by approximately $19 per share, or approximately 40 percent from the closing price on Friday, August 22, 2014, the last prior trading day. That same day, August 25, 2014, IAT HONG and BO ZHENG, the defendants, sold the 18,000 shares that they had begun acquiring twelve days earlier for profits of approximately $380,000.

### The Intel-Altera Transaction

24.  In or about January 2015, Law Firm-1 was retained by Intel in connection with the Intel-Altera Transaction.

25.  Between in or about January 2015 and on or about March 27, 2015, Partner-1 was privy to Inside Information about the Intel-Altera Transaction. On several occasions during this

10

time period, Partner-1 obtained confidential information about the contemplated transaction via email. For example, on or about January 29, 2015, Partner-1 received an email with deal terms, including the proposed price per share to purchase Altera.

26. Between at least as early as on or about January 13, 2015, in the same month that Law Firm-1 was retained by Intel to advise on the Intel-Altera Transaction, and on or about February 10, 2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, caused approximately 2.8 gigabytes of confidential data to be exfiltrated from the Law Firm-1 Email Server over the course of at least two days.

27. Beginning on or about February 17, 2015, during the time Law Firm-1 was advising Intel and after IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, had obtained access to confidential email data maintained at Law Firm-1, the defendants used the Inside Information to purchase shares of Altera stock in the Trading Accounts. Prior to that date, none of the Trading Accounts had purchased any shares of Altera.

28. To further effectuate their insider trading scheme, between on or about February 17, 2015 and on or about March 27, 2015, one or more of IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, used the Inside Information to purchase additional shares of Altera stock in the Trading Accounts on at least 26

11

occasions, ultimately purchasing more than 210,000 shares. These trades were executed on exchange platforms in the United States, including through exchanges based in the Southern District of New York.

29. On or about March 27, 2015, a financial newspaper published an article reporting on confidential merger discussions between Intel and Altera (the "March 27 Newspaper Article"). Following the publication of the article, on March 27, 2015, Altera's share price increased $9 per share, or approximately 26 percent, from Altera's share price on March 27, 2015 just prior to the March 27 Newspaper Article.

30. On or about April 10, 2015 and April 13, 2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, sold all of their shares of Altera stock for a profit of approximately $1.4 million.

31. Ultimately, on or about June 2, 2015, the Intel-Altera transaction was publicly announced.

## The Law Firm-2 Hack and Insider Trading

32. Beginning at least in or about April 2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, obtained Inside Information from Law Firm-2 in furtherance of their scheme to enrich themselves by obtaining and trading on the basis of Inside Information exfiltrated from the networks and servers of the Victim Law Firms.

12

33. For example, in or about December 2014, Law Firm-2 was retained by Pitney Bowes in connection with the Pitney Bowes-Borderfree Transaction. As noted, Partner-2 worked on this transaction for Law Firm-2.

34. Beginning at least on or about April 7, 2015, after Law Firm-2 had been retained to advise Pitney Bowes, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, without authorization, caused one of Law Firm-2's web servers (the "Law Firm-2 Web Server"), located in New York, New York, to be accessed by using the unlawfully obtained credentials of a Law Firm-2 employee. HONG, ZHENG, and HUNG then caused malware to be installed on the Law Firm-2 Web Server. The malware on the Law Firm-2 Web Server allowed unauthorized access to at least one of Law Firm-2's email servers, also located in New York, New York (the "Law Firm-2 Email Server"), which contained the emails of Law Firm-2 attorneys, including Partner-2.

35. Between on or about April 8, 2015 and on or about July 31, 2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, caused approximately 7 gigabytes of confidential data to be exfiltrated from the Law Firm-2 Email Server over the course of at least six days.

36. Beginning on or about April 29, 2015, hours after IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, had caused data

13

from the Law Firm-2 Email Server to be exfiltrated, HONG and HUNG used the Inside Information to begin purchasing shares of Borderfree stock for the Trading Accounts. Prior to that date, none of the Trading Accounts had purchased any shares of Borderfree stock. To further effectuate their insider trading scheme, between on or about April 29, 2015 and on or about May 5, 2015, HONG and HUNG used the Inside Information to purchase additional shares of Borderfree in the Trading Accounts on at least five occasions. These trades were executed on exchange platforms in the United States, including through exchanges based in the Southern District of New York. For example:

a. On or about April 29, 2015, the same day on which the defendants had caused data to be exfiltrated from the Law Firm-2 Email Server, HONG and HUNG purchased 18,000 shares of Borderfree, representing 25 percent of the daily trading volume in Borderfree stock.

b. On or about May 5, 2015, HONG and HUNG purchased 25,000 shares of Borderfree, representing nine percent of the daily trading volume in Borderfree stock.

37. In total, IAT HONG and CHIN HUNG, the defendants, used the Inside Information to purchase 113,000 shares of Borderfree.

38. On or about May 6, 2015, the Pitney Bowes-

14

Borderfree Transaction became public. On that day, Borderfree's stock price increased by approximately $7 per share, or 105 percent, from the previous day's closing price. On or about May 18, 2015, IAT HONG and CHIN HUNG, the defendants, sold their Borderfree shares, earning a profit of approximately $841,000.

## Additional Insider Trading and Attempted Insider Trading Based on Inside Information Hacked from the Infiltrated Law Firms

39. In addition to trading on Inside Information in connection with the Contemplated Intermune Transaction, the Intel-Altera Transaction, and the Pitney Bowes-Borderfree Transaction, detailed above, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, carried out their scheme to enrich themselves by obtaining and trading on the basis of Inside Information exfiltrated from the networks and servers of the Infiltrated Law Firms concerning at least ten additional M&A transactions, including certain M&A transactions that were contemplated but never consummated. Several of these M&A transactions involved Partner-1 or Partner-2. In total, as a result of trading on Inside Information, the defendants enriched themselves by at least $4 million.

## Attempts to Hack the Targeted Law Firms

40. To further support their scheme to obtain and trade on Inside Information exfiltrated from the networks and servers of the Victim Law Firms, between at least in or about March and September 2015, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants,

15

repeatedly attempted to cause unauthorized access to the networks and servers of the Targeted Law Firms using means and methods similar to those used to successfully access the Infiltrated Law Firms. For example:

a. On or about March 31, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-3 through a remote access website maintained by Law Firm-3.

b. On or about April 3, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-4 using the name and email address of an internetworking supervisor employed by Law Firm-4.

c. On or about April 3, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-5 through a remote access website maintained by Law Firm-5.

d. On or about April 3, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to an email server maintained on the network of Law Firm-6 through a remote access website maintained by Law Firm-6.

e. Between on or about April 3, 2015 and on or about April 6, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-7 more

16

repeatedly attempted to cause unauthorized access to the networks and servers of the Targeted Law Firms using means and methods similar to those used to successfully access the Infiltrated Law Firms. For example:

a. On or about March 31, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-3.

b. On or about April 3, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-4 using the name and email address of an internetworking supervisor employed by Law Firm-4.

c. On or about April 3, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-5 through a remote access website maintained by Law Firm-5.

d. On or about April 3, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to an email server maintained on the network of Law Firm-6 through a remote access website maintained by Law Firm-6.

e. Between on or about April 3, 2015 and on or about April 6, 2015, HONG, ZHENG and HUNG attempted to cause unauthorized access to the network and servers of Law Firm-7 more

16

than five thousand times.

### Hacking of the Robotics Company Victims

41. Also between at least April 2014 and late 2015, in addition to their efforts to hack the Victim Law Firms' networks and servers, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, also caused confidential information to be exfiltrated from the networks and servers of the Robotics Company Victims, using substantially similar means and methods of exfiltration as were used to access and attempt to access and exfiltrate information from the Victim Law Firms. Specifically, certain of the same servers that were used to carry out the hacks of the Robotics Company Victims also were used to carry out the hacks and attempted hacks of the Victim Law Firms. Among other confidential information, HONG, ZHENG and HUNG obtained confidential and proprietary information concerning the technology and design of consumer robotic products, including detailed and confidential design schematics (the "Proprietary Schematics"). Following these exfiltrations from the Robotics Company Victims, HONG, ZHENG and HUNG exchanged emails containing certain of the confidential information they had caused to be exfiltrated from the Robotics Company Victims, including the Proprietary Schematics.

17

## Statutory Allegations

### The Conspiracy

42. From at least in or about April 2014 up to and including at least in or about late 2015, in the Southern District of New York and elsewhere, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Object of the Conspiracy

43. It was a part and an object of the conspiracy that IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to

18

make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon any person, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

Means and Methods of the Conspiracy

44. Among the means and methods by which IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and their co-conspirators would and did carry out the conspiracy were the following:

a. HONG, ZHENG, and HUNG used or caused to be used deceptive means to gain and attempt to gain unauthorized access to the networks and servers belonging to the Victim Law Firms in order to obtain Inside Information, including information regarding non-public M&A transactions.

b. The deceptive means used or caused to be used, or attempted to be used or caused to be used, by HONG, ZHENG, and HUNG included obtaining and using security credentials, including usernames and passwords, of certain employees who administered the networks and servers of the Victim Law Firms (the "Administrative Credentials").

c. HONG, ZHENG, and HUNG, while in possession of Inside Information unlawfully obtained from the Infiltrated Law

19

HUNG purchased 48,544 shares of Altera.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH EIGHT
### (Insider Trading)

The Grand Jury further charges:

46. The allegations set forth in paragraphs 1 through 41, and 44 through 45, are incorporated by reference as if set forth fully herein.

47. On or about the dates set forth below, in the Southern District of New York and elsewhere, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, to wit, HONG, ZHENG, and HUNG executed and caused

21

others to execute the securities transactions listed below based on material, non-public information obtained by deceptively gaining access into or causing unauthorized access into the Infiltrated Law Firms' networks and servers:

| Count | Defendant | Dates | Stock | Transaction |
|-------|-----------|-------|-------|-------------|
| Two | HONG | 8/13/2014-8/21/2014 | Intermune | Purchase of 16,200 shares of common stock |
| Three | ZHENG | 8/18/2014-8/19/2014 | Intermune | Purchase of 1,800 shares of common stock |
| Four | HONG | 2/17/2015-3/26/2015 | Altera | Purchase of 82,044 shares of common stock |
| Five | HUNG | 2/17/2015-3/27/2015 | Altera | Purchase of 69,700 shares of common stock |
| Six | ZHENG | 2/25/2015-3/27/2015 | Altera | Purchase of 61,000 shares of common stock |
| Seven | HONG | 4/29/2015-5/5/2015 | Borderfree | Purchase of 56,000 shares of common stock |
| Eight | HUNG | 4/29/2015-5/5/2015 | Borderfree | Purchase of 57,000 shares of common stock |

(Title 15, United States Code, Sections 78j(b) and 78ff; Title
17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT NINE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

48.   The allegations set forth in paragraphs 1 through
41, and 44 through 45, are incorporated by reference as if set
forth fully herein.

49. From at least in or about April 2014 up to and including at least in or about late 2015, in the Southern District of New York and elsewhere, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

50. It was a part and an object of the conspiracy that IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TEN
## (Wire Fraud)

The Grand Jury further charges:

51. The allegations set forth in paragraphs 1 through 41, and 44 through 45, are incorporated by reference as if set

forth fully herein.

52.   From at least in or about April 2014 up to and including at least in or about late 2015, in the Southern District of New York and elsewhere, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, HONG, ZHENG, and HUNG engaged in a scheme to steal and convert to their own use confidential information maintained by the Victim Law Firms, in order to execute and cause others to execute securities transactions, and in the course of executing such scheme, caused, among other foreign and interstate wires, electronic communications to be sent to servers located in the Southern District of New York, including servers belonging to Law Firm-2.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT ELEVEN
### (Conspiracy to Commit Computer Intrusion)

The Grand Jury further charges:

24

53. The allegations set forth in paragraphs 1 through 41, and 44 through 45, are incorporated by reference as if set forth fully herein.

54. From at least in or about April 2014 up to and including at least in or about late 2015, in the Southern District of New York and elsewhere, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, gaining unauthorized access to computers, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(a)(5)(A).

55. It was a part and an object of the conspiracy that IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, knowingly and willfully would and did intentionally access a computer without authorization and exceed authorized access, and thereby obtain information from a protected computer, for purposes of commercial advantage and private financial gain, and in furtherance of a criminal act in violation of the laws of the United States, to wit, the securities fraud and wire fraud crimes charged in Counts One through Ten of this Indictment, and the value of the information obtained was greater than $5,000, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(B).

25

56. It was a further part and an object of the conspiracy that IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, knowingly and willfully would and did cause the transmission of a program, information, code, and command, and as a result of such conduct, would and did intentionally cause damage without authorization, to a protected computer, and would and did cause loss to one and more persons during any one-year period aggregating at least $5,000 in value, in violation of Title 18, United States Code, Sections 1030(a)(5)(A), and (c)(4)(B)(i).

## Overt Acts

57. In furtherance of the conspiracy and to effect the illegal objects thereof, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and their coconspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about July 21, 2014, ZHENG emailed HONG a foreign-language email titled, "[Law Firm-1] analysis template," with an attached spreadsheet that contained historical data regarding two public M&A transactions in which Partner-1 provided advisory services in approximately 2012.

b. On or about July 29, 2014, HONG emailed HUNG a document listing the names of eleven partners at Law Firm-1.

26

c. On or about January 12, 2015, HONG, ZHENG and HUNG sent and received emails containing certain Proprietary Schematics exfiltrated from Robotics Company Victim-1.

d. On or about January 13, 2015, HONG, ZHENG and HUNG caused data to be exfiltrated from email inboxes maintained on the Law Firm-1 E-mail Server.

e. Between on or about April 3, 2015 and on or about April 6, 2015, HONG, ZHENG, and HUNG caused more than five thousand attempted infiltrations of Law Firm-7.

f. On or about March 23, 2015, HONG, ZHENG and HUNG caused approximately 26 gigabytes of confidential data to be exfiltrated from Robotics Company Victim-1 and transferred to a particular external server (the "Server").

g. On or about April 1, 2015, HONG, ZHENG and HUNG caused the Server to access a webpage belonging to Law Firm-1.

h. On or about April 7, 2015, HONG, ZHENG, and HUNG caused malware from the Server to be installed on servers located in New York, New York belonging to Law Firm-2.

i. On or about April 29, 2015, HONG, ZHENG and HUNG caused data to be exfiltrated from email inboxes maintained on the Law Firm-2 E-mail Server, located in New York, New York.

j. On or about April 29, 2015, HONG and HUNG

27

purchased 18,000 shares of Borderfree.

k. On or about March 3, 2015, HONG, ZHENG, and HUNG purchased 48,544 shares of Altera.

(Title 18, United States Code, Section 371.)

## COUNT TWELVE
### (Computer Intrusion: Unlawful Access - Law Firm-2)

The Grand Jury further charges:

58. The allegations set forth in paragraphs 1 through 41, 44 through 45, and 57, are incorporated by reference as if set forth fully herein.

59. From at least in or about April 2015 up to and including at least in or about late 2015, in the Southern District of New York and elsewhere, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, knowingly and willfully, intentionally accessed a computer without authorization and exceeded authorized access, and thereby obtained information from a protected computer, for purposes of commercial advantage and private financial gain, and in furtherance of a criminal act in violation of the laws of the United States, to wit, the securities and wire fraud crimes charged in Counts One through Ten of this Indictment, and the value of the information obtained was greater than $5,000, to wit, HONG, ZHENG, and HUNG unlawfully accessed and caused others to unlawfully access networks and servers located in New York, New York belonging to Law Firm-2 to obtain Inside

28

Information that HONG, ZHENG, and HUNG used to purchase shares of publicly traded companies.

(Title 18, United States Code, Sections 1030(a)(2)(C), 1030(c)(2)(B), and 2.)

## COUNT THIRTEEN
### (Computer Intrusion: Intentional Damage - Law Firm-2)

The Grand Jury further charges:

60. The allegations set forth in paragraphs 1 through 41, 44 through 45, and 57, are incorporated by reference as if set forth fully herein.

61. From at least in or about April 2015 up to and including at least in or about late 2015, in the Southern District of New York and elsewhere, IAT HONG, BO ZHENG, and CHIN HUNG, the defendants, and others known and unknown, knowingly and willfully caused the transmission of a program, information, code, and command, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer, and caused loss to one and more persons during any one-year period aggregating at least $5,000 in value, to wit, HONG, ZHENG, and HUNG unlawfully installed and caused others to install malware on servers located in New York, New York belonging to Law Firm-2 to access and obtain Inside Information that HONG, ZHENG and HUNG used to purchase shares of publicly traded companies, and thereby impaired the integrity of Law Firm-2's data, systems, and information.

29

(Title 18, United States Code, Sections 1030(a)(5)(A),
1030(c)(4)(B), and 2.)

## FORFEITURE ALLEGATIONS

62. As a result of committing one or more of the
foregoing securities fraud and wire fraud offenses alleged in
Counts One through Ten of this Indictment, IAT HONG, BO ZHENG, and
CHIN HUNG, the defendants, shall forfeit to the United States
pursuant to Title 18, United States Code, Section 981(a)(1)(C) and
Title 28, United States Code Section 2461, all property, real and
personal, that constitutes or is derived from proceeds traceable
to the commission such offenses.

63. As a result of committing one or more of the
foregoing computer intrusion offenses alleged in Counts Eleven
through Thirteen of this Indictment, IAT HONG, BO ZHENG, and CHIN
HUNG, the defendants, shall forfeit to the United States, pursuant
to Title 18, United States Code, Section 982(a)(2)(B), any property
constituting, or derived from, proceeds obtained directly or
indirectly as a result of one or more of the offenses.

## Substitute Assets Provision

64. If any of the above described forfeitable property,
as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a
third person;

30

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(b) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all of the property set forth above.

(Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

FOREPERSON

PREET BHARARA
United States Attorney

31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

IAT HONG,
BO ZHENG, and
CHIN HUNG

Defendants.

### SEALED INDICTMENT

S1 16 Cr. 360

(15 U.S.C. §§ 78j(b) & 78ff; 17
C.F.R., § 240.10b-5; 18 U.S.C.
§§ 2, 371, 1030(a)(2)(C),
1030(a)(5)(A), 1030(c)(2)(B),
1030(c)(4)(B), 1343, & 1349.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.